CITY OF MONTPELIER *v.* CENTRAL VERMONT RAILWAY COMPANY.

January Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed May 10, 1915.

*Municipal Corporations—Delinquent Taxes—Collection—Actions
    —P. S. 644-646—Declaration—Defences—Levy—Notice—
    Tax Listers—Oaths—Sufficiency—Evidence—Records—Ad-
    missibility—Assessment on Real Estate—Validity—Illegal
    Expenditure—Property Subject to Local Taxation—Rail-
    road Property—Costs.*

Under P. S. 644-646, as amended by No. 52, Acts 1910, providing that
    taxes imposed under that and the three preceding chapters may
    be recovered in an action in the name of the town to which the
    taxes are due, a city may by such action recover the delinquent
    taxes imposed by it, and a declaration that meets the requirement
    of that statute is sufficient.

Under §2, No. 52, Acts 1910, providing that where defendant disputes
    the validity of some part or all of the taxes for the recovery of
    which suit is brought under the provisions of the act, he shall
    not avail himself of such defence unless he shall by plea or notice
    set forth the particular grounds whereon he claims the tax is
    invalid, a defendant in such action is confined to the grounds of
    invalidity set forth in his plea or notice.

Under the charter of the city of Montpelier, No. 162, Acts 1900, authori-
    zing the city to assess taxes on the grand list for such purposes
    as the city at a meeting warned for that purpose may vote, and
    one of the purposes is "the payment of debts and current expenses
    of the city," and providing that money raised by taxation shall
    constitute the sum from which appropriations and payments shall
    be made by the city council, an article in the warning for the
    annual city meeting: "To see if the city will vote a tax for the
    payment of debts and current expenses of the city," is sufficient to
    authorize the voting of a valid tax.

The charter of the city of Montpelier, No. 162, Acts 1900, authorizes the
    city council to assess taxes for the amount estimated by the board
    of school commissioners which are necessary for school purposes:

A warning of a city meeting to vote taxes contained articles pro-
posing the consideration of whether the city would make provision
for the payment of its bonded indebtedness, would vote a tax to
raise money estimated by the board of school commissioners, and
would vote a tax for the payment of debts and current expenses.
The meeting voted a designated tax on the grand list, and that a
specified part thereof should be applied to the indebtedness of
the city and should cover payment on bonded indebtedness and
for school purposes. *Held* that a tax levied pursuant to that vote
was valid, and covered the school estimates, current expenses, and
the amount to be applied on the debt, and was sufficiently definite
as to the amount to be raised for current expenses.

In an action under P. S. 644-646, as amended by No. 52, Acts 1910, for
the collection of delinquent taxes, numerous frivolous objections
to the admissibility of evidence considered and *held* without merit.

The charter of the city of Montpelier, No. 162, Acts 1900, relating to
the collection of taxes, governs the collection of taxes imposed by
the city, notwithstanding the general law applicable to the collec-
tion of taxes by towns and villages.

An illegal expenditure of some of the tax revenues does not invalidate
the tax.

Our statutes governing the taxation of railroad property contemplates
that all the real estate of a railroad corporation shall be taxed
either locally or by the general corporation tax, and that none of
it shall be taxed both ways.

Where a railroad company purchased farm lands with the buildings
thereon, after the quadrennial appraisal of the year of the pur-
chase and in contemplation of their use for railroad purposes, but
continued to use the land and buildings only for farm purposes,
they were properly listed for local taxation, and the question as
to the quality of the property was for the jury.

In a suit for the collection of delinquent taxes, a recitation in the
grand list of the acreage of the land in question is not conclusive,
but the listers may testify as to the acreage assessed.

Where three-eighths of an acre of land belonging to a railroad company
was taxed by a city as one parcel, and it appeared that the com-
pany's storage facilities were insufficient and that for many years
it has leased a part of this parcel at a nominal rent to a large
dealer in grain, flour and feed, who used the premises as the site
of a storehouse on which he was assessed a local tax, and which
he used to store produce coming to him and going out over the

railroad, and that the premises were adapted for use in connection with the railroad, enabled the railroad company to make prompt and convenient delivery of goods to the lessee, facilitated the delivery of goods from him to the railroad company, and the arrangement relieved the congested traffic in the railroad yards, the leased land was, as matter of law, used for railroad purposes and liable only to State taxation, and, as the whole parcel was assessed against the railroad for local taxation, the whole local tax thereon against the railroad was invalid.

In an action under No. 52, Acts 1910, for the collection of delinquent taxes, costs are to be taxed as may be deemed just and reasonable, and where in such suit plaintiff prevailed on numerous frivolous questions raised, though it failed to recover a part of the taxes for which it sued, it is awarded full costs.

ACTION under P. S. 644-646, as amended by No. 52, Acts 1910, for the collection of delinquent taxes. Plea, the general issue with notice. Trial by jury at the March Term, 1913, Washington County, *Fish,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion fully states the case.

*Harry B. Amey* and *John W. Gordon* for the defendant.

*Burlon E. Bailey* and *Fred B. Thomas* for plaintiff.

HASELTON, J. This is an action under §§644, 645, 646, of the Public Statutes as amended by No. 52 of the Acts of 1910. It is brought to collect, in the manner therein provided, taxes assessed in 1911 on three pieces of railroad property separately set in the grand list, and collector's fees. One piece is set in as about three-eighths of an acre of land leased to B. Blair, R. C. Bowers, and E. W. Bailey & Co., another piece is called the Langdon meadow, and is set in the list as 18 acres of land with buildings on Winooski Avenue. The third piece is called the Nicholas meadow and is described in the list as 24 acres of land and storehouse. There are farm buildings on the Langdon meadow, and there is a storehouse on the Nicholas meadow. The Langdon meadow and the Nicholas meadow adjoin each other, and both belonged to the Langdon estate until October, 1910, when they were purchased by the defendant company.

The defendant pleaded the general issue with notice of special matter in defence. Trial by jury was had, and verdict and judgment were for the plaintiff for the sum of $358.21, being the amount of the taxes claimed and collector's fees. The defendant brings a bill of exceptions.

The defendant, under an exception taken in the course of the trial, claims that the city of Montpelier could not collect a tax by suit, in the manner here attempted, on the ground that the statute permitting a tax to be collected in such proceeding is applicable only to taxes imposed or assessed under certain chapters of the Public Statutes named in the act authorizing this procedure. Acts of 1910, No. 52, §1. But the chapters referred to are the ones under which the city of Montpelier and other cities, as well as towns, impose and assess taxes. These chapters contain the general tax law as to quadrennial appraisals and the making up of grand lists and the assessment of taxes thereon, and the city of Montpelier has no other authority under which it can impose and assess taxes. Minor details as to procedure do not affect the fact that the authority to impose and assess taxes is found in the chapters referred to. There is no doubt about the intent of the Legislature as derived from its legislative acts. Cities are not named because in this matter the word "towns" applies to cities. P. S. §22.

The defendant claimed and claims that the declaration was insufficient. But the statute says what shall be a sufficient declaration, and the declaration meets the statutory requirements. The defendant's claim is that the declaration should show things which the statute says it need not show, and such a claim is without merit. The specifications filed were amended to the satisfaction of the defendant.

Before treating the exceptions to evidence and the other numerous exceptions we point out that, under the statute sued upon, we have no occasion to consider claimed grounds of the invalidity of the whole or any portion of the tax except in so far as the notice sets forth the "particular grounds" of the claimed invalidity, but that when such grounds are so set forth in the notice the burden of proof is upon the plaintiff "in so far as the validity of the tax is so put in issue." Acts of 1910, No. 52, §2.

On trial the plaintiff, under objection and exception, introduced in evidence a certified copy of the warning of the March

meeting for 1911. The eleventh article of the warning read: "To see if the city will vote a tax for the payment of debts and current expenses of the city." The defendant's objection was that the article was so general that a valid tax could not be assessed by virtue of it. We think this article in the warning was admissible. The city council has rather extensive powers. The charter provides that it shall assess taxes upon the grand list of the city for such purposes as the city at a meeting warned for that purpose may vote; and one of the purposes, named among others, is, "the payment of the debts and current expenses of the city." Again the charter provides that the money raised by taxation, fines, and other lawful sources, except the sale of bonds, "shall constitute the entire sum from which appropriations and payments are to be made by the authority of the city council; but that the money raised by bonds shall be appropriated and paid out for the purposes for which the bonds were issued." Acts of 1900, §§47, 55.

The city meeting does not have to vote separate and respective sums for the maintenance of the police, the support of the poor, the current expenses of the fire department, those of the water department, and so on; but appropriations for these various departments and purposes are to be made by the city council out of the tax raised to meet the current expenses of the city.

The plaintiff offered in evidence a certified copy of the records of the city meetings so far as it related to certain articles of the warning.

Article Nine reads: "To see if the city will make some provision for the payment of its bonded indebtedness."

Article Ten was of the following tenor: "To see if the city will vote a tax sufficient to raise the amount of money estimated by the board of school commissioners. as necessary for school purposes."

Article Eleven is that which has been quoted earlier in the opinion.

When Articles Nine and Ten were reached it was voted to pass them over.

The record as to Article Eleven relating to a tax for the payment of the debts and current expenses of the city is as follows: "Voted on motion of George L. Blanchard that a tax of $1.60 on the grand list be voted to include the furnishing of the City Hall, and ten cents of the same to be applied on the in-

debtedness of the city. This motion to cover Articles Nine, Ten, and Eleven.''

The defendant objected to the record of the city meeting on the following grounds: Because the action taken under Article Eleven was unintelligible in that it jumbled together three different things; because before the vote was taken under Article Eleven, Articles Nine and Ten had been passed over; and because the record does not show what the vote taken may have covered, and that the record does not declare the result of the vote if there was one. The objection was overruled and in this there was no error. By passing over Articles Nine and Ten the voters were able to see, by the vote taken on Article Eleven, more distinctly the aggregate tax which they were voting, while at the same time they could see what amount they were voting on the indebtedness of the city to which Article Nine related, and that the tax voted included the amount estimated by the school commissioners as necessary for school purposes, which under the charter became, upon the action of the school commissioners, a fixed sum which the city council was bound to raise by assessment. Acts of 1900, No. 162, §47.

The policy of the Legislature as expressed in the charter of the city of Montpelier is to commit to a board of school commissioners, having in charge the one matter of the management and control of the schools, the sole right to determine, within certain limits, the sum which shall be raised for the support of schools. Acts of 1900, No. 162, §§89, 93, 94, and 47.

These charter provisions are not in their essential character peculiar to the city of Montpelier, but are expressed in other city charters. Here, the school commissioners had made and submitted their estimates, as sufficiently appears, had kept within the limit of the discretion intrusted to them, and the vote to raise a tax which was to cover the school estimates, and the current expenses, and the amount to be applied on the debt, was certain as to the amount to be raised to meet current expenses, since it was capable of being made certain by a very simple computation. No objection was made on the ground that the furnishing of the City Hall was not one of the current expenses of the city.

The fact that the record states the scope of the motion after stating the vote on it seems to be one ground of the objection; but the meaning is clear enough, and the result of the vote is stated in unmistakable terms.

At a city meeting held July 25, 1911, on adjournment from a previous date, a fifteen cent tax was voted. The record of this meeting was put in evidence by the plaintiff under objection and exception. The objection was that the record did not show a valid tax to be assessed against the defendant, but the only ground of claimed invalidity pointed out was that the vote did not show upon what list the tax was to be assessed. The warning explicitly referred to the grand list of 1911, and the action was taken thereunder, and the tax voted was to be payable on a date named in the autumn of 1911. The tax must be understood to have been voted on the list of 1911 pursuant to the warning.

The plaintiff, under objection and exception, introduced in evidence a book showing the preliminary or qualifying oath taken March 29, 1910, by each of the persons chosen as listers in that year. The defendant objected because the oath failed to show that the persons taking it swore to do anything as listers, or to describe them as listers. However, the oath is exactly that prescribed by statute, P. S. 577, and is sufficient. The defendant also objected because the jurat does not designate or describe them as listers. But the taking of this oath was necessary to make them duly qualified listers. The objection is without merit. The defendant further objected on the ground that, whereas the statute requires such oaths to be filed by the city clerk, there was nothing in this case to show any filing of the city clerk. These preliminary oaths were bound up with the grand list of 1910, and this book was filed in the office of the city clerk. The objection raised no question as to the time of filing which does not appear unless by inference. The oaths were properly received as against any objection made by the defendant.

The city clerk was allowed to testify, under objection and exception, that the persons who subscribed the oaths referred to were persons bearing the same names as the persons who were the listers of the city of Montpelier. The objection was rather minutely divided, but the identifying evidence was admissible as against any objection that was stated.

The grand list book for 1910 was then offered and received for the purpose of showing the final oath of the listers. This oath was in all respects that required by law. P. S. 570. This evidence was objected to on the sole ground that there was no evidence that the persons who subscribed it were the same persons who had taken the preliminary oath. But the names were the

same in both cases, that is, John J. Glinney, Clarence A. Gale, and Frank E. Grout. This correspondence of names, subscribed to different oaths in the same book, was certainly some evidence of identity.

The plaintiff offered a page of the book referred to and also a certain line thereof, and they were received under objection and exception. Besides the objections as to the oaths already considered, the only objection was that the exhibit ''was not shown to be a record of the listers of the city of Montpelier for 1910.'' The assumption on which this objection was based was contrary to the tendency of the evidence, and the page in question was properly received.

The grand list book of 1910, and a certain line thereof were received in evidence under objection and exception. The whole book was offered for the purpose of showing its general make-up, and was properly received for the purpose of making intelligible the material parts. Some of the objections have already been considered. The others were for a failure of the listers to comply with certain provisions of No. 40, Acts of 1910. But this act was not in force when the grand list of 1910 was made up. P. S. 571, as unamended, was then in force, and was sufficiently complied with.

The quadrennial appraisal of real estate in 1910, and a particular page thereof, and a specific item thereof, were received in evidence under objection and exception. One objection was that the oath attached thereto was not in proper statutory form, and this claim is repeated in the defendant's brief, though no reasons are given for the claim. The oath was in the form then prescribed by statute, P. S. 528, and the objection is without merit. The other objections were that the property is not properly classified and that the statute had not been complied with in the making out and filing of the list. These objections were altogether too general and were properly overruled. The whole book was offered only because the defendant had claimed in its notice of defence that the book was not legally made up, and the book was properly received on that question, no valid objection being made to it.

The plaintiff offered the grand list book of 1911, so far as it related to the real estate of the defendant, and it was received under objection and exception. At the time this list was made up the statute required it to state the ward or other municipal

division "wherein such taxpayer resides and wherein taxable real and personal estate herein specified is located;" and "the domicile or postoffice address of non-resident taxpayers and corporations having taxable property in town, provided the same are known to the listers." The book referred to did not state the ward in which the property in question was located, nor the residence of the Central Vermont Railway Company, nor its domicile or address, but this failure did not in itself invalidate the list, for such result is expressly provided against by statute. Acts of 1910, No. 46, §§1 and 3. The list was made up in compliance with all the mandatory provisions of the law. P. S. 571; *Willard* v. *Pike*, 59 Vt. 202, 210, 211, 9 Atl. 907; *Adams* v. *Sleeper*, 64 Vt. 544, 24 Atl. 990.

The grand list book of 1911 was also received, under objection and exception, to show the final oath of the listers attesting the correctness of the list of that year. It appears that they used the form then in force. Acts of 1910, No. 46, §6. This form had in parenthesis words to be used in case the listers affirmed instead of taking the oath. It is appropriate that such parenthetical words should be struck out if an oath is taken, and here they were not. But the jurat certifies that the listers took and subscribed the "oath." So the alternative parenthetical words are to be treated as of no force.

What appears as above stated was one matter of objection. The listers did not add the designation of their office after their names. But this is immaterial if they were in fact the listers. for an oath is personal and is not taken in this or that "capacity." The jurat describes them as listers, and their names are the names of three men who took the preliminary oath of listers for that year. It was objected that there might have been three individuals, bearing the same names, going, as listers, in "there" (meaning we suppose into the city clerk's office) and taking and subscribing the oath. This objection like one already considered was no reason for excluding the evidence. It was objected that it does not appear that this oath was ever filed with the city clerk, but the evidence was otherwise.

The plaintiff offered a certified copy of the rate bill for the tax for 1911. It was regular on its face and was received under objection and exception. The objections made to it were not. however, specified in the notice of defence, which simply claimed that no rate bill was legally issued and put in the hands of the

treasurer. The defendant could not, by the very terms of the statute, avail himself of any defence without setting forth the "particular grounds" of it in its notice of defence. Acts of 1910, No. 52, §2. Certain parts of the rate bill were separately offered under objection and exception, but the defendant was precluded by the statute from urging its objections.

The defendant, here in its brief, enumerates something like a dozen "particular grounds" of the claimed illegality of the rate bill. If it desired their consideration it was incumbent upon it, under the statute to disclose these particular grounds in the notice.

Under objection and exception the city treasurer was allowed to give testimony tending to show that he received the rate bill from the city council, issued notices to the taxpayers, acted as collector for thirty days, and thereafter issued his warrant to the collector against all persons named in the rate bill who had not paid all taxes therein specified, among others, against the defendant. Of the objections made to the above testimony none is available under the defendant's notice and exceptions except one, namely, that collection through the treasurer, and these proceedings, were not authorized by law for the year 1911.

The proceedings testified to were not in accordance with the general law applicable to towns and villages, as the defendant claims they should have been, but were taken in compliance with the provisions of the charter of the city of Montpelier, and these provisions are controlling. The provisions in point are found in §47 of No. 162 of the Acts of 1900, and in §30 of that act, as amended by No. 223 of the Acts of 1904.

A part of this contention is that as the defendant was designated as a non-resident the treasurer could not issue his warrant until after he had given it sixty days' notice. The defendant says that the charter of Montpelier makes no provision in respect to notice to non-residents, and that so the general law applies, which requires sixty days' notice to a non-resident. But the charter, as amended in 1904, does provide for notice to non-residents, and provides that it shall be given thirty days before the issuance of a warrant. Acts of 1904, No. 223, §2. The amendment having been overlooked, the argument based on a misapprehension of the charter, fails.

The plaintiff offered the assessment and rate bill of the special tax of fifteen cents on the dollar already referred to.

This document was regular on its face. It was received under objection and exception, but the objections are not available, because the particular grounds thereof are not pleaded in the notice.

The plaintiff introduced evidence of the posting of notices by the treasurer that a rate bill of taxes was in his hands for collection. There was an objection and exception on the ground that such posting was no notice to the defendant and of no force against it. But the posting of the notices was a part of the treasurer's duty. He had testified to the mailing of notices to the taxpayers, but the charter required him to post notices as well. The objection was of no force.

The treasurer also testified under objection and exception that, at the end of thirty days after receiving the special rate bill, he issued his warrant against delinquent taxpayers including the defendant.

The objection raised no question not already considered and was properly overruled.

Evidence was received, under objection and exception, tending to show the deposit in the county clerk's office of a certificate of the election of the city clerk and a copy of the record of the appointment of the assistant city clerk, as required by §§ 3448 and 3464 of the Public Statutes, if we assume that those sections apply to city clerks as well as to town clerks. It is enough to say that under the defendant's notice its objections were not available.

We have so far considered the exceptions, but not always in the order in which they were taken, occasionally also considering two or more exceptions together. We have now arrived, following this method, at exception 29, and we postpone the consideration of that exception and also of exception 30 for consideration in connection with later exceptions.

The defendant offered to show by the city treasurer the amount of money received by the treasurer and what was done with it, on the ground that if any of the money received for taxes was diverted from lawful channels the tax would be invalidated, and that money was in fact illegally expended for the support of the Montpelier Military Band. Evidence under the offer was excluded, and its exclusion was proper. The defendant's notice afforded no basis for such evidence; and besides if there was, in fact, an illegal expenditure of some of the tax revenues, the

tax was not thereby invalidated. We do not intimate, by any means, that an appropriation towards the support of the band may not be legal. P. S. 3623.

Exceptions 33, 34, 35, and 36, relate to the overruling of objections to evidence as to the issuing of the treasurer's warrant to the collector and the doings of the collector by virtue thereof; but the defendant's notice was not sufficiently specific to make any of the objections available, and they were properly overruled.

The remaining exceptions regarding evidence ending with number 43, related, all but number 37, to questions already considered, or to questions which the defendant was not entitled to raise under its notice.

The matter of exception 37, as well as that of exceptions 29 and 30, will be considered elsewhere.

The most important and interesting questions raised by the exceptions in this case remain to be considered. They are whether the parcels of land in question are subject to local taxation, or whether they are not so subject, but are to be appraised as a part of the railroad property subject to a state tax, and so exempt from local taxation.

Our scheme for the taxation of railroad property contemplates that all of its real estate shall be taxed in one way or the other, and that none of it shall be taxed in both ways. P. S. 527; P. S. 713, as amended by No. 28, Acts of 1908; Acts of 1908, No. 29, §3; P. S. 797, as amended by No. 30, §4, Acts of 1908.

The two principal parcels of land that were taxed were the Langdon meadow, called 18 acres, and the Nicholas meadow so-called, put in the list as a 24 acre piece. This parcel of real estate was put in as the Nicholas meadow and storehouse. Both parcels were bought of the Langdon estate in October 1910, after the quadrennial appraisal of that year, and were acquired in contemplation of their use for railroad purposes. The plaintiff's evidence tended to show that they were farming lands before the purchase and that at the time of the appraisal, in 1911, no different character had been impressed upon them, that they were still farming lands, that nothing was listed except what had been the private property of the Langdon estate, and that nothing was listed which was in use by the railroad, except as farming lands with the buildings thereon used in connection therewith for purposes incidental to farming. The question was for the

jury, and the tax assessed on those parcels is collectible in this suit.

We here notice exception 29, heretofore passed upon. One of the listers testified to the quadrennial appraisal of the Nicholas and Langdon meadows in 1910, that the representative of the estate was notified and appeared before the listers when they were sitting to hear complaints, and made some complaints, but made no complaint as to the Nicholas and Langdon meadows so-called. That part of the testimony to the effect that no complaint was made as to the Nicholas and Langdon meadows was given in redirect examination and was taken under objection on the sole ground of immateriality. Mere immateriality does not often vitiate, and assuming that this testimony would not have been admissible in direct examination, we think that it was well enough in redirect in view of the cross-examination, which it is not necessary to detail.

Exception 30, which we have passed over is properly considered here. Clarence A. Gale, one of the listers, testified to familiarity with the Nicholas meadow and storehouse, as well as with the Langdon meadow, and to familiarity with them and with what was being done with them at the time the grand list of 1911 was made, April 1, 1911; that he had passed over the premises every few days for several years, that the Nicholas meadow was growing a grass crop, and that no part of it that the listers appraised and set against the railroad company was occupied by tracks or used for railroad purposes. This testimony was given without objection. After a considerable cross-examination the witness testified in redirect that the listers didn't intend to and didn't set in the list any land upon which there were tracks.

This was objected to, not that it was not proper in redirect, but on the ground that the acreage put in the list was conclusive that land covered by tracks was covered by the appraisal, that the record must govern, that parol testimony could not be received, that the witness was only one member of the board, and that what he had in mind could not be put in evidence. But the statement of the acreage was not conclusive. The witness's statement of what was not intended to be done, coupled with his statement that it was not done, was not objectionable. The witness, it was true, was only one of the listers, but the others also

testified much to the same effect, and his testimony was admissible in connection with theirs.

The tax upon the strip of land of three-eighths of an acre requires careful consideration.    The testimony shows that the defendant's storehouse facilities were insufficient to accommodate its patrons, and that for many years it had leased to Bailey & Co. a part of its land, near its freight-house and adjoining one of its tracks, at the nominal rent of one dollar a year.    The part so leased is a part of the three-eighths of an acre strip.    The strip so leased is about 100 feet long and 20 feet wide, and is entirely covered by a storehouse which Bailey & Co., large dealers in grain, flour, and feed, use for the storing of produce which comes to them from the railroad or goes out over the railroad from this storehouse.    The storehouse is adapted to be used in connection with the railroad and enables the railroad to make prompt and convenient delivery of heavy goods to Bailey & Co., and at the same time facilitates the delivery of goods from Bailey & Co., to the railroad.    The purposes stated were certainly the controlling ones.

Bailey & Company receive, on an average, nearly 25 carloads a week, the traffic in the yard is congested and is relieved by this arrangement, out of which the railroad gets no benefit except as congestion is relieved, and as it is able more promptly to discharge its duties as to delivery and as to the furnishing of reasonable terminal facilities.    *Covington Stock Yard Co.* v. *Keith,* 139 U. S. 128, 133, 35 L. ed. 73, 11 Sup. Ct. 469; *Grand Trunk Ry. Co.* v. *Richardson,* 91 U. S. 454, 23 L. ed. 356; *Osgood* v. *Central Vermont Ry. Co.,* 77 Vt. 334, 60 Atl. 137, 70 L. R. A. 930.

Now, considering that this little strip of railroad land located as it is, is rented to Bailey & Co. for one dollar a year, and that its controlling use has been and is to facilitate the business which the railroad is bound to carry on, was it not a question of law whether or not this strip of land was leased for general commercial purposes?    We think that, on all the evidence, the question was one of law, that the land was not leased for general commercial purposes in any fair sense, and that it was not subject to local taxation, but constituted a part of the land used for railroad purposes and to be considered in the appraisal of the road for the purposes of the state tax.    It sufficiently appears that the storehouse, itself, stands in the list of E. W. Bailey & Co.    The question here relates only to the proper classification

4

for purposes of taxation of the strip of railroad land on which the storehouse stands. The other parts of the three-eighths acre strip we do not need to consider for, since the whole was put in as one parcel, the tax upon the whole three-eighths acre strip is invalidated. *Scott* v. *St. Johnsbury Academy,* 86 Vt. 172, 174, 84 Atl. 567; *Johnson* v. *Jones,* 86 Vt. 167, 83 Atl. 1085.

Defendant's exception 37, which was hereinbefore passed over related to this three-eighths acre strip, but in view of the result, the defendant has nothing to complain of regarding that, and the exception requires no more than this mention.

We have considered in one way or another the questions in the case necessary to a decision under the notice and the exceptions taken and relied on. As many of these questions were raised in a variety of ways, we have thought it sufficient to discuss and decide some of them upon the simple statement that they were properly raised. Otherwise great and unnecessary prolixity would have resulted.

The amount recoverable is got by subtracting, from the amount recovered, the sum of $43.75, the amount assessed on the three-eighths of an acre of land, and a proportionate amount of the collector's fees computed on a per centum basis, that is, $3.50. The result of the computation is $310.96. As the matter was left, we do not consider that the question of the basis of the collector's fees is in the case.

In this proceeding costs of suit are to be taxed as may be deemed just and reasonable. Acts of 1910, No. 52, §1. A consideration of the numerous questions raised in this case and their disposition, makes it appear just and reasonable that full costs should be allowed the plaintiff.

*Judgment affirmed except as to the amount recovered, as to that reversed and judgment that the plaintiff city recover of the defendant $310.96 and costs of suit.*