TOWN OF BRISTOL *v.* BRISTOL RAILROAD COMPANY.

May Term, 1916.

Present:  MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed February 15, 1917.

*Taxation—No. 29, Acts 1908—Motion for Verdict—Conflicting Evidence—Use of Property for Railroad Purposes—Exceptions—When too General to be Considered.*

Under the circumstances, a storehouse, owned by a railroad company, situated adjacent to a side track, and rented to various persons, *held*, to be taxable locally under the provisions of No. 29, Acts 1908.

The statement in a bill of exceptions that a certain point was a mooted question means, at most, that the evidence thereon was conflicting.

Where the evidence is conflicting upon a point in issue the question cannot be disposed of upon a motion for a verdict, but is for the jury.

A tenement house, built and owned by a railroad company and occupied by its locomotive engineer, at a fixed rental, is taxable locally under No. 29, Acts 1908.

The question whether the controlling use of a stable owned by a railroad company, was for railroad purposes, so as to render it exempt from local taxation under No. 29, Acts 1908, *held*, under the evidence, to be for the jury.

To prevent property owned by a railroad from being taxable locally, under No. 29, Acts 1908, the railroad use must be of substantial and controlling character.

An exception to the failure of the court to charge according to certain numbered requests is too general to require attention by the Supreme Court.

ASSUMPSIT to recover taxes assessed by the plaintiff town upon three separate pieces of real estate owned by defendant. Plea, the general issue. Trial by jury at the December Term, 1915, Addison County, *Slack*, J., presiding. Verdict for the

plaintiff.   The defendant excepted.   The case is stated in the opinion.

*Sherman R. Moulton* for the defendant.

The phrase "property used for railroad business or purposes," used in Sec. 1, No. 51, Acts 1912, providing for the taxation of such property by the state, means such property as is reasonably convenient to the business of serving the public as a common carrier, not only such as is absolutely essential to the operation of the road.   *State* v. *Mayer, etc., of Jersey City,* 9 Atl. 782; *State* v. *B. & O. R. R. Co.,* 48 Md. 49; *Montpelier* v. *C. V. Ry. Co.,* 89 Vt. 36, 93 Atl. 1047, 1054; *Central Ohio, etc., Gas Co.* v. *Capital City Dairy Co.,* 60 Ohio St. 96, 64 L. R. A. 391, 397; *Attorney General* v. *Great Eastern Ry. Co.,* 5 App. Cas. 473, 22 Eng. Rul. Cas. 114; *Louisville, etc., Co.* v. *Comm.,* 146 Ky. 827, 143 S. W. 412, 38 L. R. A. (N. S.) 830; *Jacksonville, etc., Co.* v. *Hooper,* 160 U. S. 514, 40 L. ed. 515; and cases cited in American Notes, 22 Eng. Rul. Cas. 129 ff.

If any one of the buildings here in question is used in part for railroad business or purposes, the tax upon that building cannot be collected.   *Johnson* v. *Jones,* 86 Vt. 167; *Scott* v. *St. Johnsbury Academy,* 86 Vt. 172.

*Robert W. McCuen* and *J. B. Donoway* for the plaintiff.

P. S. 706, 707, 722, were amended by Nos. 29 and 30, Acts 1908, which two acts were approved on the same day, and are to be construed as one act, so as to allow certain kinds of property owned by railroad corporations such as particularly described in Sec. 3, No. 29, Acts 1908, to be set in the grand list of such corporations in the towns where such property is located.   *Kimball* v. *Hopkins,* 16 Vt. 618; *Harrington* v. *Harrington Est.,* 53 Vt. 649; *Montpelier* v. *C. V. Ry. Co.,* 89 Vt. 36.

Since there was evidence tending to prove the plaintiff's claim upon the issue raised by the pleadings, the defendant's motion for a verdict was properly overruled.   *James* v. *Booth,* 10 Vt. 268; *Fletcher* v. *Wakefield,* 75 Vt. 257; *Manley* v. *D. & H. Canal Co.,* 69 Vt. 101; *Palmer* v. *St. Albans,* 56 Vt. 519; *State* v. *Smith,* 72 Vt. 366; *Clark* v. *Employer's Liability Co.,* 72 Vt.

458; *Smith* v. *Franklin*, 61 Vt. 385; *Montpelier* v. *C. V. Ry. Co.*, 89 Vt. 36.

It was not the intent of the legislature to exempt from local taxation such property as may be conveniently used in the operation of a railroad.   Sec. 3, No. 29, Acts 1908; Elliott on Railroads, § 750; *Scott* v. *St. Johnsbury Academy*, 86 Vt. 175.

POWERS, J.   Assumpsit for taxes.   The defendant is a common carrier operating a railroad between Bristol and New Haven Junction.   It owns in Bristol three separate pieces of real estate, referred to as the storehouse, the tenement house and the stable. More or less land belongs to each, and the question is whether this property is taxable under No. 29, Acts of 1908.

The storehouse is a three story building situated on the south side of and adjacent to the defendant's side track.   Merchandise is loaded to or from the cars through a large door on north side of the ground floor,—a ''gang-plank'' being used therefor.   This ground floor of the building was rented to one Kilburn, a grain dealer, for twenty-five dollars per year.   All of Kilburn's grain, except what he buys locally, comes in over the defendant's road, and he uses this ground floor for the storage of grain received over the railroad until he desires to move it to another storehouse which he maintains uptown.   He also uses it for the convenience of delivering grain to his customers,— a considerable portion thereof being delivered to customers direct from the cars or from this storehouse.

The basement of this storehouse was rented to one Garland, a potato dealer, for the storage of potatoes during certain seasons of the year.   Garland is the largest shipper of potatoes over the defendant's railroad.   He buys and sells locally during the season and ships to points outside for sale at retail.   He loads most of his potatoes on the opposite side of the track, direct from the teams into the car.   The basement will hold a very large quantity of potatoes and Garland usually stores them awaiting a rise in the market.   The top floor of the storehouse was occupied by a section man as a tenement at a rental of six dollars per month, without reference to his contract of employment.

The foregoing statement is gathered from the recitals of the bill of exceptions.   If nothing further appeared it would be necessary for us to say as matter of law that the storehouse and lot were taxable locally, being rented for general commercial

purposes. For thus far the only use shown is commercial and nothing appears to indicate that the property in any way contributes to the prompt or efficient discharge of the defendant's duties as a common carrier in the receipt and delivery of freight or the furnishing of reasonable facilities therefor. *Montpelier v. Central Vt. Ry. Co.,* 89 Vt. 36, 93 Atl. 1047.

But the bill of exceptions contains the further statement that whether there was sufficient room in the defendant's freight house during the greater part of the year to store large quantities of grain and potatoes was a mooted question. Giving the defendant the very most possible, this statement only means that on the question whether or not the defendant's facilities for handling freight in its regular course of receipt and delivery were reasonably adequate without the storehouse, the evidence was conflicting. Therefore the question as to the controlling use of the property could not be disposed of under the defendant's motion for a verdict, but was for the jury.

The tenement house was built by the defendant and has for many years been occupied by its locomotive engineer, who pays ten dollars a month for the use of it. This property, then, comes within the express terms of statute above cited and is taxable locally. The exceptions state that the defendant claimed that the evidence tended to show that the rent paid by the engineer was taken into consideration in fixing his wages, and that the plaintiff claimed the contrary. We need not stop to consider how that fact, if true, would affect the situation, as the statement does not give the tendency of the evidence but only the claims of the parties regarding its tendency.

The stable is a small building on the north side of the defendant's tracks. The defendant receives and transports over its railroad a large number of small parcels designated as broken freight; and it owns and keeps a horse and necessary equipment for delivering such freight to nearby consignees and the mail to the post office. At some previous time this horse was kept in the stable, but for three years it had been kept at the stable of an employee,—the extra equipment only being kept in the stable in question. One of the defendant's officers conducts a coal business in Bristol and keeps a team and equipment for handling it. This team and equipment is kept in the defendant's stable. The coal man pays no rent but services are frequently rendered to the defendant by his coal teams without charge.

The question before us is not as to the right of a railroad company to keep a team for the purposes above specified, or as to the local taxability of such team and equipment. The question pertains wholly to the real estate in question. Inasmuch as the team as an active agency in the defendant's business has no present relation to the stable involved in this suit, it cannot control the latter's classification under the tax law. The most that can be claimed for the defendant is that the storage of the extra equipment in the stable made the use of it partly a railroad use. The occupancy of the coal man was commercial in the sense of the statute, for although no money rent was paid the services rendered were equivalent thereto. Standing thus, the question was what was the controlling purpose for which the stable was used, and this question under the evidence was for the jury.

The defendant insists that any use by the railroad for its own purposes would prevent taxing this property locally, but we think that railroad use must be of substantial and controlling character to have that effect. *Montpelier* v. *C. V. Ry. Co., supra.* Otherwise the most trivial railroad use would predominate over a commercial use of the most decisive character.

The defendant seasonably presented various requests to charge, and excepted to the failure of the court to charge according to seven of them. This exception is too general to require attention. *Goodwin* v. *Barre Savings Bank,* 91 Vt. 228, 100 Atl. 34. Moreover, the parties disagree as to whether the court complied with the requests, or not. But the charge, though referred to, is not furnished us, so we cannot say how that was, and error does not appear.

The bill of exceptions makes a controlling reference to the transcript of the evidence. It is not furnished us, and although (contrary to the requirements of our practice) we have made several applications to counsel for it, we have been unable to obtain it. We have, therefore, been obliged to dispose of the case on the unaided bill.

*Judgment affirmed.*