## I. T. JOHNSON *v.* W. G. JONES.

### May Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed July 4, 1912.

*Taxation—Exemptions—Property Used for Pious or Charitable
Purposes—''Sequester''—''Camp-Meeting.''*

A Methodist evangelist acquired full title to two lots of land, one of
    which he set apart and used exclusively for camp-meeting pur-
    poses, under. the auspices of no particular denomination, but open
    to persons of such. denominations as he wished to have there. On
    this lot, with the· aid of voluntary contributions of labor and
    money, he erected cottages, a boarding hall, preacher's stand and
    seats, a dormitory for preachers, several church tents, and a barn;
    and during camp-meeting, as an incident thereto and without
    profit, he charged for the use of the cottages, for board, for meals,
    and for feed and shelter for horses, the money so realized being
    used to pay the expense of the camp-meetings. The other tract
    was not connected with the camp-ground, and therefrom he sold

timber in payment of a note given for money borrowed for improvements on the camp-ground. *Held*, that the lot not connected with the camp-ground was taxable, but that the camp-meeting ground and its improvements were exempt, under P. S. 496, subd. 6, as property "sequestered or used for public, pious, or charitable uses," and that the word "sequester" means to set apart, to put aside, to separate.

Where an inseparable tax is in part void because assessed against exempt property, the whole tax is void.

TRESPASS AND TROVER against defendant as collector of taxes for the town of Johnson. Plea, the general issue. Trial by court on an agreed statement, at the December Term, 1911, Windsor County, *Miles*, J., presiding. Judgment, *pro forma*, for the plaintiff. The defendant excepted. The opinion states the case.

*W. E. Tracy* and *F. G. Fleetwood* for the defendant.

*Davis & Davis* for the plaintiff.

WATSON, J. The only question before the Court is, whether on the agreed case the plaintiff's real estate in the town of Johnson, known as Ithiel Falls, was exempt from taxation under the laws of the State, April 1, 1907.

The plaintiff is a Methodist clergyman, serving no one church regularly, but an evangelist. Prior to 1906 and 1907, he lived in Johnson. He became owner of this property in part by deed dated November 5, 1898, in part by land contract dated May 31, 1899, acquiring full title by decree based upon said contract, dated August 22, 1906.

The property, about eight acres in all, consists of two pieces of land: one of five acres fenced on the roadside and bounded on the south and west by the Lamoille River; and one of three acres situated immediately on the opposite side of the river— that is, the two pieces are separated by the river. On April 1, 1906, and April 1, 1907, the three acre piece was timber and wood land. On the five acre piece there were in 1900, two cottages, and prior to the assessment of the tax in question there were nine cottages, one boarding hall, preacher's stand and seats, one dormitory for preachers, one barn and stall for horses.

one Binghamville, Vermont, M. E. Society tent, one tent of the Union Evangelical Church of Montgomery, Vermont—all to be used as a place for camp-meeting purposes.

In the year 1900, all said real estate was occupied by the plaintiff under an agreement with the then owners, and he conducted camp-meetings thereon during the months of June and August in that year, and annually thereafter, some cottages being built on the five acre piece by himself with the aid of voluntary contributions of labor and money. After becoming the owner, the plaintiff built a covering for the tabernacle, and erected additional cottages. From that time he has held and still continues to hold camp-meetings thereon, not under the auspices of any particular denomination, but open to the people of such denominations as he wished to have on said premises. He has allowed the Grange and the Knights of Pythias, each, to hold one picnic there, without charge for the use of the grounds. They had no use of the buildings.

Since the plaintiff obtained title, he has improved the premises by additional buildings for camp-meeting purposes, in which he has been aided by voluntary contributions of labor and material. All camp-meeting services have been held on the five acre piece. During such gatherings the plaintiff charges for the use of the cottages, including board for each individual, five dollars for ten days, for single meals, twenty-five and thirty-five cents, and for feed and shelter for horses, thirty-five cents. For hitching horses on certain portions of the grounds no charge is made. The income thus derived is put into the general fund, and the same is used in defraying expenses of carrying on the camp-meetings. Other than as herein stated the plaintiff has never used any of said real estate, nor permitted the same to be used, except for camp-meeting purposes.

About three years prior to 1906, the plaintiff owed one Hodgkins a note for three hundred dollars, given for money borrowed from the latter solely for the purpose of erecting buildings on the camp-ground. At that time the plaintiff sold to Hodgkins all the timber on the three acre piece, and the value thereof was indorsed on the note in payment. With this exception no lumber has been cut on the premises and sold therefrom since the plaintiff became the owner.

The tax in question was assessed on all said Ithiel Falls property, April 1, 1907. It is admitted that all proceedings in

connection with the assessment of the tax, and in respect to its collection, were regular in form, and according to law, if the property was taxable.

By P. S. 496, subdivision VI, "Real and personal estate granted, sequestered or used for public, pious or charitable uses," shall be exempt from taxation. It is under this clause of the statute, if any, that the claimed exemption exists. The three acre piece is entirely separated from the other piece by a river of considerable size, and the record does not show any bridge or other way of passage between them; neither does the record show that it was granted, sequestered, or used for any of the purposes named in that clause of the statute. Consequently the claim of exemption is without foundation as to this piece.

Our further consideration of the case will therefore be confined to the five acre piece. Mr. Webster, in his New International Dictionary, gives, among other definitions of the word *sequester,* "To set apart; to put aside; to remove; separate." He defines the word *camp-meeting* as "A religious gathering held, usually by Methodists, for conducting a series of religious services in the open air or in a tent in some retired spot, as a grove or wood. It usually lasts for several days, during which those present lodge in tents, temporary houses, etc." In *Willard* v. *Pike,* 59 Vt. 202, 9 Atl. 907, it was held that under the clause of the statute quoted above, "the exemption must turn on the *fact* of grant, sequestration, or use for 'public, pious or charitable uses,' and not on the language of the deed" under which the land is held. In *Grand Lodge of Masons* v. *Burlington,* 84 Vt. 202, 78 Atl. 973, the direct and immediate *use* was made the test. In *Phillips Exeter Academy* v. *Exeter,* 58 N. H. 306, 42 Am. Rep. 589, a case quoted from with approval in *Willard* v. *Pike,* the exemption granted to the plaintiff was to "All lands, tenements, and personal estate, that shall be given to the trustees for the use of the academy." It was held that the ownership was not to be the test of the exemption, but that the use was, the court saying, the fact that the Legislature ignored ownership and made use the test, showed unmistakably that they recognized the essential distinction between the two, and fixed the latter, preferably, as the basis of the exemption.

In the case before us, the record shows not only that the five acre piece was in fact set apart, put aside, for camp-meeting

purposes, and that all improvements thereon have been made only and peculiarly to that end, but that ever since it has been owned or controlled by the plaintiff the use of this piece has been exclusively, directly, and immediately devoted to such purposes, except when permitted to be used for the two picnics as above stated. And since the fact of these two picnics being allowed there is not made the basis of any claim by the defendant, it will not be further noticed.

There can be no doubt that the use for camp-meetings has been and is a pious use, within the fair intent and meaning of the statute, and consequently that the five acre piece was exempt from taxation on April 1, 1907, unless disentitled to such standing by reason of the pay received by the plaintiff for use of cottages and board or meals of individuals, and for feed and shelter for horses, during or within the time of camp-meeting services. But the income thus had was put into the general fund and used in paying the expenses of carrying on the camp-meetings. It is not conceivable how such religious gatherings, continuing for several days, can be had without attending expenses, to meet which considerable income from some source is necessary. When such income is derived from furnishing the common comforts and necessaries of life on the ground in connection with these religious gatherings, and merely incidental and subsidiary thereto, as is shown in this case, there is no element of private gain, and it does not operate to deprive the property of the exemption to which it would otherwise be entitled. *Matter of Will of Vassar,* 127 N. Y. 1, 27 N. E. 394; *Philadelphia* v. *Women's Christian Association,* 125 Pa. St. 572, 17 Atl. 475; *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, 21 Am. Rep. 529.

The tax in question was therefore assessed upon property a part of which was exempt and a part taxable, and there is no way of distinguishing that part of the tax which might have been lawfully assessed from that which was unauthorized. And since the inseparable tax is in part void, the whole is void. *Johnson* v. *Colburn,* 36 Vt. 695; *Libby* v. *Burnham,* 15 Mass. 147; *Santa Clara County* v. *Southern Pacific R. R. Co.,* 118 U. S. 394, 30 L. ed. 118, 6 Sup. Ct. 1132.

*Judgment affirmed.*