## Mark Herrick v. Town of Marlboro

[789 A.2d 915]

No. 00-591

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 9, 2001
Motion for Reargument Denied December 20, 2001

*Michael Rose*, St. Albans, for Plaintiff-Appellant.

*Paul S. Gillies*, Montpelier, for Defendant-Appellee.

**Skoglund, J.** Plaintiff taxpayer Mark Herrick appeals from a Windham Superior Court finding that his land, which is "sequestered" for "pious" uses, is not exempt from property taxation under 32 V.S.A. § 3802(4). Because Herrick failed to irrevocably dedicate the sequestered property for the "pious" use, he fails to meet the three-prong test set forth and affirmed in our recent line of cases. We therefore affirm the trial court's denial of tax exempt status on the sequestered lands. To the extent this decision conflicts with *Johnson v. Jones*, 86 Vt. 167, 83 A. 1085 (1912), it is hereby overruled.

Herrick owns 171 acres, including a two-unit house and some outbuildings (parcel #256.000), in the Town of Marlboro. He has

allowed a nonprofit corporation called The Mountain Ministry Inc., a nondenominational Christian service ministry, the exclusive use of this property.

The Mountain Ministry assists poor people in transition, particularly single mothers, battered women, and homeless persons. Among other services, it provides food, clothing, furniture, moving and transportation assistance and firewood cut from the land. At times the land is used for retreat camping, gardens, storage space for homeless people, and for raising turkeys and other farm animals for consumption. All of the Mountain Ministry's services are provided free of charge to anyone on a nondiscriminatory basis, based on need and available resources. Under this arrangement between Herrick and the Mountain Ministry, the Mountain Ministry uses all the property, rental income from one unit of the two-unit house on the property, and all revenue from the sale of timber and maple products from the property to support its operating expenses.

On August 1, 1998, Herrick removed the upstairs rental apartment from the rental market. The apartment is now used as a safe house for the Mountain Ministry's patrons. When rented for profit, the unit was rented for $450 per month. There is currently no charge for use of the apartment.

Herrick is on the Mountain Ministry's board of directors and works for the Mountain Ministry full-time, without pay or any other form of compensation. On March 25, 1999, Herrick executed a document he entitled "Sequestration" in which he sequesters all of parcel #256.000 to the exclusive use of the Mountain Ministry. See *Johnson v. Jones*, 86 Vt. at 170, 83 A. at 1086 (defining "sequester" as setting aside or apart). Herrick receives no financial consideration in return for the sequestration of land for the Mountain Ministry, but retains title to the real estate and may revoke the sequestration arrangement at any time.

The Town assessed Herrick's parcel at $247,800.00 for the 1999 tax year. Herrick argues that the lands sequestered for the Mountain Ministry's use fall squarely within the tax exemption for lands which are: "granted, sequestered or used for public, pious or charitable uses." 32 V.S.A. § 3802(4). Herrick relies on *Johnson v. Jones*, a case with facts similar to this one, where the Court held that land owned by a clergyman, devoted exclusively to the use of church groups for religious gatherings, with any and all revenue derived from the lands used for the sole purpose of defraying expenses of gatherings, was

property sequestered for pious uses and thus exempt from taxation. The issue of nonprofit ownership of the lands by the clergyman was mentioned in the case but was not considered germane to resolution of the exemption issue which focused on the clergyman's pious use of the land. See *id.* at 170-71, 83 A. at 1086-87. Herrick, in kind, emphasizes the pious *use* of his land and, arguing that the Legislature intentionally spoke in terms of use when crafting the statute, disputes any statutory requirement that the property be held in nonprofit ownership.

The Town of Marlboro concedes that *Johnson v. Jones* would control here, were the case good law. However, the Town maintains that *Johnson* has since been implicitly overruled by our more recent line of cases interpreting 32 V.S.A. § 3802(4) as a whole and mandating application of a three-part test laid out in *American Museum of Fly Fishing, Inc. v. Town of Manchester*, 151 Vt. 103, 110, 557 A.2d 900, 904 (1989). The Town further urges the conclusion that Herrick's claims fail under the three-part test and our subsequent cases applying the test. On cross-motions for summary judgment, the trial court agreed with the Town. It held that Herrick's failure to make irrevocable the sequestration of the land for the Mountain Ministry's use fails the first prong of the *American Museum of Fly Fishing* test requiring that property "be dedicated unconditionally to public use," *id.* at 110, 557 A.2d at 904, and that Herrick's sequestration lacked the requirement of concurrent nonprofit ownership and use under the third prong of the test. The court concluded, therefore, that the property did not qualify for tax exemption. This appeal followed.

At trial there were no contested facts, and the parties submitted a joint stipulation of facts. On cross-motion for summary judgment, taxpayer Herrick had the burden of proving he was entitled to judgment as a matter of law. That same standard is applicable here. *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 182, 531 A.2d 887, 888 (1987) ("Our standard on review of a motion for summary judgment is the same standard as applied by the trial court . . . ."). Summary judgment is appropriate when the record demonstrates that there is no genuine issue as to material fact, and the moving party is entitled to judgment as a matter of law. *Burr & Burton Seminary v. Town of Manchester*, 172 Vt. 433, 435, 782 A.2d 1149, 1151 (2001).

The statute at issue states:

The following property shall be exempt from taxation:

. . . .

(4) Real and personal estate granted, sequestered or used for public, pious or charitable uses; real property owned by churches or church societies or conferences and used as parsonages and personal property therein . . .; real and personal estate set apart for library uses and used by the public and private circulating libraries . . .; lands leased by towns or town school districts for educational purposes; and lands owned or leased by colleges, academies or other public schools . . .; and lands and buildings owned and used by towns for the support of the poor therein . . . .

32 V.S.A. § 3802(4). This case concerns only the first exemption for "[r]eal and personal estate granted, sequestered or used for public, pious or charitable uses." *Id.*

"Our paramount goal in statutory construction is to give effect to the Legislature's intent." *Burr & Burton Seminary*, 172 Vt. at 436, 782 A.2d at 1152. The definitive source of legislative intent is the statute's language, if that language plainly sets forth the intent of the Legislature. *Hambley v. Town of St. Johnsbury*, 130 Vt. 204, 206-07, 290 A.2d 18, 20 (1972). "[W]hen the plain meaning of the statute contradicts the intent of the Legislature, we are not confined to a literal interpretation of the statutory language." *Burr & Burton Seminary*, 172 Vt. at 436, 782 A.2d at 1152. Rather, we should gather legislative intent from "a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law." *Holbrook Grocery Co. v. Commissioner of Taxes*, 115 Vt. 275, 278-79, 57 A.2d 118, 120 (1948).

In *American Museum of Fly Fishing*, 151 Vt. at 110, 557 A.2d at 904, the Court examined the "public use" component of § 3802(4) ("Real and personal estate granted, sequestered or used for public, pious or charitable uses") and laid out a three-part test distilling criteria "explicitly stated" or "implicit in the prior decisions of this Court" for determining tax exempt "public uses." In keeping with the legislative intent, the Court held that in order to qualify for tax exemption, a "public use" must meet the following criteria: (1) the property must be dedicated unconditionally to public use; (2) the primary use must directly benefit an indefinite class of persons who are part of the public, and must also confer a benefit on society as a

result of the benefit conferred on the persons directly served; and (3) the property must be owned and operated on a not-for-profit basis. *Id.* at 110, 557 A.2d at 904. Taxpayer Herrick argues that the *American Museum of Fly Fishing* three-part "public use" test does not apply to his lands which have been "sequestered," not "granted" nor "used," to serve a "pious," as opposed to "public" use under the statute. Given our repeated admonition that 32 V.S.A. § 3802(4) be read as a whole in order effectuate legislative intent, we are compelled to extend the "public use" test to lands sequestered for pious and charitable uses under the statute. Subsequent applications of the *American Museum of Fly Fishing* test to cases interpreting 32 V.S.A. § 3802(4) have further refined the requirements under the test.

In *Lincoln Street, Inc. v. Town of Springfield,* 159 Vt. 181, 615 A.2d 1028 (1992), Lincoln Street, a private nonprofit charitable organization which operates group homes for mentally handicapped persons, leased one such property from private owners. Under the lease agreement the organization was obligated to pay the annual personal and real property taxes assessed against the leased property. Lincoln Street sought a declaratory judgment for a property tax exemption arguing that property owned by private individuals and leased to a nonprofit organization for public or charitable use is exempt from property tax pursuant to 32 V.S.A. § 3802(4). *Id.* at 182, 615 A.2d at 1029. Lincoln Street asked the Court to overrule *American Museum of Fly Fishing* and all other decisions that require concurrence of ownership and use as a prerequisite to a public or charitable use exemption. Lincoln Street argued that the plain meaning of the tax exemption clause, when read independently, establishes direct and immediate use of property as a necessary criterion for property tax exemption. *Id.* at 184, 615 A.2d at 1030.

The Court acknowledged that the tax exemption in 32 V.S.A. § 3802(4) contains no express requirements for ownership. However, recognizing that our "primary objective is to give effect to the intent of the Legislature," the Court was constrained to "gather legislative intent by considering, not just isolated sentences or phrases," but the separate clauses of the statute "together, as parts of a unified statutory system." *Id.* at 184-85, 615 A.2d at 1030. Doing that, the Court found that the concurrence of nonprofit ownership and use is necessary to make the statute as a whole effective. Having therefore considered at length the legislative and common law history of the

statute and having determined that, since at least 1886, three guiding principles were explicit or implicit in all decisions of this Court construing the legislative purpose of § 3802(4), the Court reaffirmed the three-part test. *Id.* at 183-84, 615 A.2d at 1031.

The crux of our decision in *Lincoln Street* rests upon the fact that the purpose of § 3802(4)

> is to benefit the community as a whole by benefiting that indefinite part of the public served by public, pious, or charitable organizations. Where the benefit of an exemption under § 3802 would flow to private individuals, however, rather than to an indefinite class of persons who are part of the public, the use is not public, the purpose of the statute is not met, and the town cannot be required under the statute to exempt the property from taxation.

*Id.* at 185, 615 A.2d at 1031.

Even though, under the lease agreement in *Lincoln Street*, the direct benefit of the tax exemption, if allowed, would flow to the nonprofit organization, we found the "ultimate beneficiaries of an exemption" would be the lessor private property owners. *Id.* at 186, 615 A.2d at 1031. The private owner lessors would, for example, "benefit from the rental and investment income of their property, regardless of its use," and "would enjoy lower ownership risks and costs." *Id.* We also found that to permit "an exemption here would allow private title owners to enjoy the appreciation in value of their property, if any occurs, without paying any taxes on that property." *Id.*

██ This Court is aware that by sequestering lands, Herrick has not entered into a lease agreement with the Mountain Ministry. But Herrick's sequestration scheme unfortunately contains a fatal flaw which prevents him from overcoming the *American Museum of Fly Fishing* test: there is no concurrence of nonprofit ownership and use. Granted, Herrick derives no immediate income from activities or services performed on the property. But so long as Herrick retains title to the land and various benefits of ownership, such as property value appreciation and increasing investment income, flow to Herrick and not the Mountain Ministry, lands owned by Herrick himself will not qualify for the tax exemption.

Most recently, in *Twin Valley Community Services, Inc. v. Town of Randolph*, 170 Vt. 648, 756 A.2d 1233 (2000) (mem.), we again

upheld the applicability of the *American Museum of Fly Fishing* three-part test and the requirements of concurrent nonprofit ownership and use and unconditional dedication to public use. Unlike *Lincoln Street*, however, we found that a lessor-lessee relationship did not thwart proper application of the tax exemption for uses performed by the lessee where the entities shared a singular and legally recognized nonprofit mission.

The property at issue in *Twin Valley* was owned by a nonprofit corporation which was organized solely to further the purposes of its lessee, another nonprofit corporation. The Town argued that the taxpayer lessor had not unconditionally dedicated his land to a public use because the lease contained conditions such as the lessor's right to terminate the lease and enter should the lessee default. The Town further argued that the fact that taxpayer owns the property, while another nonprofit entity uses the property for the public benefit, bars taxpayer from entitlement to the tax exemption for lack of concurrent ownership and use as construed in *Lincoln Street*. The Court rejected both arguments and held that because "[b]oth the taxpayer-owner and the lessee-operator are nonprofit corporations with a single mission," certain lease restrictions did not thwart unconditional dedication of the land to the nonprofit use and did not infringe upon the concurrence of ownership and use. *Twin Valley*, 170 Vt. at 650, 756 A.2d at 1235. Indeed, the nonprofit taxpayer in *Twin Valley* was organized specifically to further the purposes of the nonprofit corporation lessee, which was its only member. *Id.*

What distinguishes the facts in *Twin Valley* from the facts herein is the presence of incontrovertible dedication of the property to a pious or charitable mission. Unlike the lessor in *Twin Valley*, Herrick is not himself a nonprofit corporation limited in the manner he may dispose of corporate assets, such as the sequestered property. Cf. 11B V.S.A. § 14.05 (limiting nonprofit corporation in disposition of assets upon dissolution). Indeed, there is nothing in Herrick's sequestration which prevents him from revoking the sequestration at will, for any, or no reason at all.

As noted by the trial court, Herrick's selfless intentions in this case are beyond question. While we recognize his personal devotion to the Mountain Ministry, there is no unequivocal showing that his lands are irrevocably and legally bound to the Mountain Ministry's mission. In fact, by retaining title in himself and maintaining the revocability of the sequestered lands, he has organized the

sequestration in such a way that the Mountain Ministry's access to the land operates at his will, revocable whenever he should change his mind and find the arrangement no longer satisfactory. As further noted by the trial court, the interpretation of § 3802(4) which Herrick advocates would doubtless invite tax-avoidance schemes of much less obvious merit than Herrick's "sequestration."

The doctrine of stare decisis does not preclude us from recognizing developments in our law and overruling *Johnson v. Jones* or those portions of *Johnson* inconsistent with our more recent decisions. As the Supreme Court has noted, "*[s]tare decisis* is not an inexorable command." *Payne v. Tennessee*, 501 U.S. 808, 828 (1991). Furthermore, it is well established that any statutory exemption from property tax is to be strictly construed against the taxpayer. *Burr & Burton Seminary*, 172 Vt. at 436, 782 A.2d at 1152. We will not, however, mandate such strict adherence to these prerequisites so as to defeat the purposes of the statute. See *In re Northeast Wash. County Cmty. Health Ctr.*, 148 Vt. 113, 115, 530 A.2d 558, 559 (1987) (citation omitted). Mindful of the potential for abuse of the tax exemption provision and with due regard for the revenue deprived the Town by operation of any tax exemption, we hold that in failing to implement some type of legally protected relationship between Herrick and the Mountain Ministry, Herrick has not dedicated his land unconditionally to a public use and is therefore ineligible for tax exemption under 32 V.S.A. § 3802(4).

*The decision of the superior court is affirmed.*