In re: Appeal of the Town of Colchester, No. S0933-10 CnC (Toor, J., Jan. 28, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| IN RE: APPEAL OF THE TOWN OF COLCHESTER | Docket No. S0933-10 CnC |

RULING ON MOTION FOR SUMMARY JUDGMENT

Pursuant to 32 V.S.A. § 5408(d), the Town of Colchester (the Town) appeals the decision of the State's Valuation Appeal Board (VAB) dated July 12, 2010. The VAB concluded that it could not find that certain property located in the Town is tax exempt, and therefore denied the Town's appeal of its equalized education property value (EEPV) and the coefficient of dispersion (COD) for 2008. The State of Vermont (the State) has moved for summary judgment on the grounds that the Town has not shown, and cannot show, that the property at issue satisfies the requirements for tax exemption set forth in 32 V.S.A. §§ 3802(4) and 3832(2). Charles L. Merriman, Esq. represents the Town; Assistant Attorney General Suzanne M. Monte represents the State.

Section 5408(d) requires this court to "hear" the appeal from the VAB "de novo." 32 V.S.A. § 5408(d). This "signifies that that court shall conduct a new evidentiary hearing and make its own independent findings." Town of Killington v. Dep't of Taxes, 2003 VT 88, ¶ 5, 176 Vt. 70 (citing State v. Madison, 163 Vt. 360, 369 (1995)). However, given that this case is in a summary judgment posture, the court has not taken evidence or made findings of fact. Instead, the court applies the ordinary summary judgment standard, seeking to determine whether the State has established that there is no genuine issue of material fact and that the State is entitled to judgment as a matter of law.

I. Factual Background

The following facts are derived from the parties' statements, and are undisputed except where noted. The Religious Hospitallers of St. Joseph of Vermont, Inc. (RHS)[1] is a Vermont nonprofit corporation organized exclusively for religious purposes. PACE Vermont, Inc. (PACE) is a Vermont nonprofit corporation organized for charitable and education purposes and activities including: coordinating and providing health, social and transportation services to elders of designated communities; establishing a comprehensive service and financing model of long-term care; establishing and maintaining adult day health centers and other facilities as appropriate; and developing and conducting educational programs for communities and PACE staff.

In 2006 and 2007, RHS owned a 5-acre property in Colchester (the Property) occupied by a 3-story brick building that was previously used by RHS as a convent, but which was converted a number of years ago into a residential care home for nuns as well as offices. By a Lease Agreement dated March 24, 2006, RHS leased the Property to PACE for the purpose of providing health and social services to the elderly in exchange for an annual rental payment of at least $93,800. Specifically, under the terms of the lease:

> The Premises shall be used exclusively for the provision and administration of health and social services related to the Program of All-Inclusive Care for the Elderly ("PACE"), serving persons who are frail, nursing home eligible, and seeking a non-residential adult day program, and directly related activities, and for no other, different or additional purpose unless the prior written consent of Landlord is obtained.

---

[1] The Hospitallers is "[a] military and religious order founded in the 12th century and so called because it built a hospital at Jerusalem to care for pilgrims. . . . The Hospitallers still function in several countries as a humanitarian society." Black's Law Dictionary 754–55 (8th ed. 2004).

Lease, § 3(a). Nothing in the record indicates that RHS gave written consent to use the Property for a different or additional purpose, nor does it appear that PACE has deviated from the lease provision.

In 2007, Colchester Town Assessor Mark Paulsen set the Property's value at $1,624,800. The State asserts that Paulson also determined that the Property is taxable. The Town disputes whether Paulson made that determination, and asserts that Paulson was not qualified to determine the legal tax status of the Property. RHS and PACE timely appealed to the Board of Listers, which did not change the assessment. On October 25, 2007, RHS and PACE filed an appeal with the Board of Civil Authority (BCA). Paulsen appeared for the Board of Listers, and argued that the property was not exempt from taxation. On December 3, 2007, the BCA issued its decision, declining to rule on the issue of taxability and upholding the assessor's valuation. In particular, the BCA wrote:

> After much discussion and deliberation the Committee felt that there are two issues to address. The first issue has to do with the exempt status of the property. The Committee determined that whether a property is tax exempt is a question of law, and concluded that the BCA does not have jurisdiction to rule on the exemption issue and should decline to rule on the issue of taxability. It is a matter for the court to determine.
> The second issue to address is the value of the property. Although the appellant stated in the written material that the property is over-assessed and should be reduced, there was not sufficient evidence presented to back the claim of $790,000, using the income approach.
> We conclude that the subject property's fair market value is $1,624,800 based on the evidence presented.

State's Ex. A, BCA Decision (Dec. 3, 2007). In a Notice of Appeal dated January 2, 2008, RHS and PACE appealed the BCA's decision to the Chittenden Superior Court (the

3

<u>Pace</u> appeal).[2]  RHS and PACE later amended their petition to include a request for declaratory relief regarding exemption.  RHS and PACE moved for summary judgment, seeking a declaration that the Property is tax-exempt.

The State asserts that the Town initially took a position adverse to the position held by RHS and PACE.  The Town denies that, asserting that it drafted a memorandum of law in opposition to RHS and PACE's motion for summary judgment and emailed the draft to counsel for the State, but later called the State's counsel and notified the State that the Town would not file the draft motion but would instead take the legal position that the property is exempt.  The motion the Town actually filed with the court supported RHS and PACE's motion for summary judgment, and requested that the court grant the motion.

The court granted the motion for summary judgment, stating: "Courts exist for purpose of resolving 'cases or controversies.'  We therefore accept Town's assent.  Submit proposed judgment."  Entry, <u>In re Pace Vermont, Inc. and Religious Hospitallers of St. Joseph of Vermont, Inc.</u>, No. S0024-08 CnC (Aug. 25, 2008) (Katz, J.).  RHS and PACE submitted a proposed order to the court, and the court issued a final order consistent with that proposed judgment.  The "Final Order" reads as follows:

> IT IS ORDERED that Appellants' Motion for Summary Judgment is GRANTED.
>
> IT IS FURTHER ORDERED THAT the property located at 786 College Parkway in Colchester ("Property") is entitled to an exemption from property taxes under 32 V.S.A. § 3802(4) for properties dedicated to public, pious or charitable uses.

---

[2] The <u>Pace</u> appeal was captioned <u>In re Pace Vermont, Inc. and Religious Hospitallers of St. Joseph of Vermont, Inc.</u> and docketed No. S0024-08 CnC.  The appeals described above—from the Town Assessor to the Board of Listers, and then to the BCA and ultimately to the Superior Court—were all pursuant to the appeals provisions of 32 V.S.A. ch. 131.

4

IT IS FURTHER ORDERED THAT the assessment for the Property for tax years 2007–2008 and 2008–2009 shall be $0.

IT IS FURTHER ORDERED THAT, as long as the Property is owned by Fanny Allen Holdings, Inc. f/k/a Fanny Allen Hospital Dieu or related successors and assigns and operated by PACE Vermont, Inc., or related successors and assigns, with a mission to care for the elderly, and that both entities remain non-profit corporations, then the Property shall be entitled to an exemption from property taxes under 32 V.S.A. Chapter 125.

IT IS SO ORDERED.

Id. Order (Oct. 22, 2008) (Katz, J.). The State of Vermont was not a party to the Pace appeal.

## II. Procedural History as it Relates to this § 5408(d) Appeal

This case has a lengthy procedural history, which the court recites here by drawing on the administrative record filed with this court pursuant to V.R.C.P. 74(d).[3] At about the same time that the Pace appeal was filed in early January 2008, the Town of Colchester—pursuant to 32 V.S.A. § 5408—petitioned the Director of the Vermont Department of Taxes' Division of Property Valuation and Review (PVR) for a redetermination of the Town's 2007 equalized education property value (EEPV) and coefficient of dispersion (COD). The Town indicated that it was disputing the Education Grand List and thus the Equalized Education Grand List; noted an appeal pending in Superior Court regarding a request for tax exempt status (the Pace appeal, presumably); and stated that it sought to have the resolution of the exemption dispute be reflected in the 2007 Education Grand List and Equalized Grand List.

By a letter dated January 11, 2008, PVR acknowledged the Town's petition for redetermination. The letter indicated that a meeting would be scheduled, and that PVR

---

[3] The following procedural history includes many of the "additional material facts not in dispute" that appear in the Town's opposition to the State's motion for summary judgment.

5

would propose a "tentative redetermination" if obvious errors were pointed out or if PVR believed corrections should be made. A representative from PVR did meet with Town officials, after which PVR issued a "Notice of Tentative Redetermination" dated March 7, 2008. The Notice of Tentative Redetermination stated that PVR "did not find sufficient reason to make changes in the equalized education property value or coefficient of dispersion. As a result, our values certified to you effective January 1, 2008 remain . . . ." PVR scheduled a hearing for April 3, 2008 in the event the Town wished to pursue its appeal further.

In a letter dated March 13, 2008 and addressed to PVR Director William E. Johnson, the Town asked that the April 3 hearing be waived and that the appeal be determined based on the Town's letter. The Town's letter asserted that the Town's equalization appeal turned on a dispute over the taxability of the Property owned by RHS, and that that dispute was currently before the Chittenden Superior Court.[4] The Town's letter concluded by recognizing that its appeal was "predicated on an as-yet undecided Superior Court action. We believe, though, that we need to lodge the appeal for the purpose of preserving Colchester's EEPV appeal rights until final adjudication of the Superior Court case."

By a letter dated March 26, 2008 and addressed to Director Johnson, the Vermont Department of Taxes indicated it did not object to the Town's request to waive the hearing. The letter, which was authored by Attorney Monte, stated the following:

> It is the Tax Department's position that the Town has provided no basis for a redetermination. As acknowledged in the Town's March 13, 2008 letter, the Town included the property at issue—property owned by [RHS] and operated by [PACE]—on its 2007 grand list, which PVR then used for

---

[4] That referred to the Pace appeal described above.

6

purposes of its 2007 Equalization Study. The taxability of the [Property] is currently under separate appeal in the Chittenden Superior Court.

> The Town has submitted no evidence in the current appeal indicating that the [Property] was incorrectly treated on its 2007 grand list or in the 2007 Equalization Study. Therefore, the Tax Department respectfully requests that the Town's request for a redetermination be denied.

Director Johnson rendered his decision in a letter dated April 8, 2008. He wrote:

> I have reviewed the letter you submitted on behalf of the Town of Colchester dated March 13, 2008, as well as the Department's March 26, 2008 response to your letter, submitted by Suzanne M. Monte, Esquire.
>
> At this time, the Town has presented no basis for recalculation of its equalized education property value (EEPV) and coefficient of dispersion (COD). As the Town has acknowledged, the taxability of the [Property] is currently pending in the Chittenden Superior Court. The Town has waived its right to a hearing in the equalization study appeal; accordingly, a finding by PVR that the property is exempt, and that the Town's Grand List should be adjusted, has no evidentiary support in this forum. Further, such finding is premature and should await a decision of the Superior Court.
>
> The Town has stated that it wishes to preserve its appeal rights, pending decision by the Superior Court, and may do so in the manner prescribed by law. . . .

In a letter dated April 9, 2008 and addressed to Director Johnson, the Town gave notice that it appealed the decision to the Valuation Appeal Board (VAB) pursuant to 32 V.S.A. § 5408(c). The Town suggested that the VAB await the decision in the Pace appeal before scheduling the redetermination appeal. By a letter dated April 30, 2008, the VAB acknowledged receipt of the April 9 letter, and indicated it would not schedule the appeal until the Superior Court decided the Pace appeal.

As described above, Judge Katz issued a "Final Order" in the Pace appeal on October 22, 2008. In a letter dated December 22, 2008, the Town advised the VAB of the Final Order, attached a copy of that order, and requested that the VAB find that the Town's Grand List is reduced by the listed value of the Property and order PVR to

recalculate the Town's EEPV using the reduced grand list. The Town's letter mentioned that the Final Order was in response to an unopposed motion for summary judgment, but the Town did not enclose a copy of Judge Katz's August 25, 2008 Entry.

In January 2009 the State moved for summary judgment before the VAB, arguing that (1) the Pace appeal is not binding on the State; (2) the Property fails the test set forth in American Museum of Fly Fishing, Inc. v. Town of Manchester, 151 Vt. 103 (1989), because there is no concurrence of ownership and use; and (3) the Property runs afoul of 32 V.S.A. § 3832(2) as a property owned by a religious society because it is not used for one of the statutorily-prescribed purposes. The Town opposed the State's motion, arguing that (1) the VAB lacks jurisdiction to determine the taxability of the Property; (2) the State is bound by the Final Order in the Pace appeal; and (3) the commissioner's equalization authority does not override that order.

The VAB issued a "Decision and Notice of Hearing" addressing the State's summary judgment motion on July 22, 2009. The VAB wrote:

> The Valuation Appeal Board has considered all filings in regards to the Town of Colchester's appeal of William E. Johnson's, Director of Property Valuation and Review, redetermination of the municipality's equalized education property value and coefficient of dispersion dated April 8, 2008.
> The State's Motion for Summary Judgment dated January 20, 2009 is hereby denied.
> The Valuation Appeal Board has scheduled a de novo hearing in accordance with 32 V.S.A. section 5408(c) on whether to include the [Property] in the Town of Colchester's 2008 equalized education property value and coefficient of dispersion (Grand List 2007). The hearing is scheduled for August 28, 2009 a Friday at 10:00 a.m. in the Colchester Town Offices in Colchester, Vermont.

8

The Board did hold a hearing,[5] after which the Town filed a Post-Hearing Memorandum of Law, proposed findings of fact, and a supplemental exhibit consisting of the March 7, 2008 "Notice of Tentative Redetermination," the March 26, 2008 letter, and the Director's April 8, 2008 redetermination letter. For its part, the State also filed a memorandum of law and proposed findings of fact, both dated November 12, 2009.

The VAB issued its "Findings and Notice of Decision" dated July 12, 2010. The VAB recounted much of the procedural history described above. In the course of doing so, the VAB noted that it had read Judge Katz's August 25, 2008 Entry, the effect of which it interpreted as being to inform the parties, and anyone else relying on the Entry, that Judge Katz, like Director Johnson, had heard "no evidentiary support" for the taxability of the Property, and was instead entering as an Order a stipulation of the parties. After discussing the procedural history, the VAB wrote as follows:

> While the three VAB members may now know something more than Director Johnson and Judge Katz about the activities taking place inside the PACE building in Colchester, after the hearing the three members were left with more questions than answers. In fact, the only witness at the hearing that had been inside the building at all was a witness for the state. The Town in the de novo VAB hearing at the end of last summer fell far short of proving that PACE was entitled to tax exempt status. The VAB cannot accept this Entry based on a stipulation of two parties as to tax exemption because the issue itself has never been tried. In fact Judge Katz seems to warn the Board not to rely on the Town's assent to the taxpayer's claim of tax exemption. Such a practice would set dangerous precedent. The problem in this case is that of many Vermont towns: whether to spend the town's limited resources in a lengthy and expensive lawsuit when so much of the tax dollars collected are sent to Montpelier for the State's education fund. . . .
>
> In conclusion, the case before the VAB in regards to the Town of Colchester, the PACE property and the Vermont Department illustrates one of the major problems with Vermont's education funding system. And that problem is that the time and expense of litigation involving tax

---

[5] The court understands that Mark Paulson offered testimony at the VAB hearing. As mentioned above, Paulson was the Town assessor who set the Property's value at $1,624,800 in 2007. At the time he appeared before the VAB, he was apparently a PVR employee.

exemption status, or property tax valuation, is borne entirely by the Towns, yet such determinations directly affect the State's equalized education grand list. One player is missing from the table at the settlement of a disagreement between a town and taxpayer, that being the State. Vermont's equalization process brings the missing player back to the table, sometimes with consequences unforeseen by the town.

Despite the policy problems as outlined above, based on the evidence and arguments presented at the hearing in Colchester, and the filings by both parties before and since the hearing, the VAB cannot find that the PACE [Property] is tax exempt and, therefore, must deny the Town of Colchester's appeal of its equalized education property value (EEPV) and coefficient of dispersion (COD) effective January 1, 2008.

The Town appeals that decision to this court pursuant to 32 V.S.A. § 5408(d).

### III.  The Town's Motion for Leave to File a Surreply

The State has now moved for summary judgment in this case on the grounds that the Town has not shown, and cannot show, that the Property satisfies the requirements for tax exemption set forth in 32 V.S.A. §§ 3802(4) and 3832(2).  The Town has filed an opposition to that motion,[6] and the State has filed a reply.  In its reply, the State cites what appears to be a transcript of Mark Paulsen's testimony at the August 28, 2009 VAB hearing.  The transcript was filed in this court on November 4, 2010 along with the State's reply, but was not included in the administrative record filed on August 2, 2010.

The Town filed a motion for leave to file a surreply, noting that the State's reply includes a partial transcript of Paulson's testimony, and seeking an opportunity to respond to that "new material and claim."  Mot. for Leave to File a Surreply at 2 (filed Nov. 17, 2010).  Also on November 17, the Town filed a surreply, asserting that Paulson's testimony actually supports the Town's estoppel claim.  Surreply at 2 (filed

---

[6] On October 11, 2010, the Town moved for an enlargement of time to oppose the State's motion.  The Town then filed its opposition on October 18, 2010.  The State has not opposed the Town's motion for an enlargement.  The court therefore grants the Town's motion for enlargement of time.

10

Nov. 17, 2010). The court therefore begins with the Town's motion for leave to file a surreply.

> Rule 74(d) requires in part:
>
> Any party desiring a transcript of any portion of the proceedings to be included in the record on appeal shall notify all other parties thereof, shall procure such portion at that party's own expense, and shall cause it to be filed with the clerk of the superior court within 30 days after the filing of the notice of appeal.

V.R.C.P. 74(d). Here, the State seeks in its reply to rely on a transcript from the VAB proceedings. The Town asserts that "the State's submittal of Paulson's supposed testimony at this late date is troubling," and describes a dispute over the responsibility for recording the hearing. Surreply at 2 n.3 (filed Nov. 17, 2010). More important for present purposes, however, is that there is no evidence that the State notified the Town that the transcript should be included in the record of this appeal, and that the transcript upon which the State relies was not filed within 30 days of August 2, 2010—the date the Town filed this appeal. The Paulson transcript is therefore not a part of the record on appeal, and the court will not consider it. The Town therefore need not respond to that transcript.

To the extent the Town's surreply—and footnote 2 in particular—helps to clarify the Town's legal arguments, the court will consider it. To that extent, in the interests of fully understanding the parties' positions, and rendering a decision that might bring this long saga of litigation to a close, the court grants the Town's motion for leave to file a surreply, and will at the same time consider the State's response to the surreply.

IV. The State's Motion for Summary Judgment

The issue presented in the State's motion is whether the Property satisfies the requirements for tax exemption set forth in 32 V.S.A. §§ 3802(4) and 3832(2). In opposition, the Town does not take up that issue directly, but instead offers a variety of reasons why summary judgment should be denied. The court takes each argument in turn.

A. The Town's Claim That PVR Either Did Not Act or Unlawfully Exercised its Powers

The Town begins its opposition by arguing that the State's motion for summary judgment attempts to "recast" the dispute as whether the Property is taxable, and thus avoids the Town's actual claim. That claim is, as best the court can tell, that PVR "unlawfully exercis[ed] judicial power when calculating the Town's common level of appraisal (CLA)."[7] Opp'n at 1 (filed Oct. 18, 2010). The court finds this argument confusing because the Town also asserts that PVR did not actually make any determination as to whether the Property is taxable. Moreover, the action in this case began when the Town petitioned the Director of PVR for a redetermination of the Town's 2007 EEPV and COD. The Town indicated in its letter to Director Johnson that its equalization appeal turned on a dispute over the taxability of the Property. In short, the Town's claim at the start of the § 5408 appeals process was not that PVR lacked authority to determine taxability, but that it affirmatively sought a ruling from PVR on that very issue. In any case, the court will address the Town's claims.[8]

---

[7] The Town says that this appeal is really about the Town's CLA because the CLA determines the Town's education tax rates, and is determined via PVR's equalization study. Opp'n at 1 n.2 (filed Oct. 18, 2010).

[8] The Town also argues that there are disputed issues of fact in this case: (1) whether the Town took a legal position which bound the Town to litigate the taxability of RHS's property on behalf of the State; (2) whether PVR "found" or "determined" RHS's property to be taxable; and (3) whether the State acted or failed to act in such a manner as to equitably estop the State from asserting that RHS's property is taxable.

The Town argues that summary judgment must be denied either because PVR did not actually make a determination as to whether the Property is tax-exempt, or because PVR does not have judicial authority to determine the tax status of property. Opp'n at 3 (filed Oct. 18, 2010). In support of its second point, the Town cites <u>Subud of Woodstock, Inc. v. Town of Barnard</u>, 169 Vt. 582 (1999) (mem.). The State maintains that the Town is incorrect, and that PVR did in fact determine that the Property is not tax exempt. The State further asserts that PVR cannot determine the EEPV and COD without determining the taxability of property, because PVR is required by statute to determine the "aggregate fair market value of all nonresidential and homestead property that is required to be listed at fair market value." 32 V.S.A. § 5401(6). Finally, the State contends that <u>Subud</u> is inapplicable because that case involved a valuation appeal under 32 V.S.A. § 4461 instead of a petition for redetermination under 32 V.S.A. § 5408.

Vermont's Equal Educational Opportunity Act (Act 60) operates to "equalize[] education expenditures per student across Vermont through a state-wide fund comprised of a general state support grant and local property tax revenue." <u>In re Town of Killington</u>, 2003 VT 87A, ¶ 2, 176 Vt. 60.

> Each year, the Department of Taxes conducts an "equalization" study, the purpose of which is to estimate the full fair market value of all property that is taxable for education purposes and to determine the level of assessment equity (coefficient of dispersion). See Introduction to Vermont's Equalization Study, Vermont Dep't of Taxes, Division of Property Valuation and Review (Dec.2004), available at http://www.state.vt.us/tax/pvr.shtml. As the Department explains, the state

Opp'n at 2 (filed Oct. 18, 2010). The first issue is one of characterization rather than fact. There is no dispute that the Town drafted a memorandum of law in opposition to RHS and PACE's motion for summary judgment in the <u>Pace</u> appeal and emailed the draft to counsel for the State, but later called the State's counsel and notified the State that the Town would not file the draft motion but would instead take the legal position that the property is exempt. The motion the Town actually filed with the court supported RHS and PACE's motion for summary judgment, and requested that the court grant the motion. In any case, the court concludes that this circumstance does not raise any factual disputes material to the legal issues raised in this case. The court concludes that the other issues are questions of law, not fact.

assesses a tax to fund education costs based on the grand lists compiled by the listers in over 250 municipalities in the state. While the listers are required to list all taxable property each year at its fair market value, it is not feasible to do so given the ever-changing real estate market and because town-wide reappraisals are not conducted annually. Thus, to treat all municipalities equally, the Department must bring grand lists to fair market value.

Dewey v. Town of Waitsfield, 2008 VT 41, ¶ 6 n.1, 184 Vt. 92.

As mentioned above, the listers in each municipality compile a grand list. The minimum contents of the list are spelled out in 32 V.S.A. § 4152. The grand list is to include "[t]he listed valuation of each parcel which is not exempt" and:

For those parcels which are exempt, what the full listed value of the property would be absent the exemption and the statutory authority for granting such exemption and, for properties exempt pursuant to a vote, the year in which the exemption became effective and the year in which the exemption ends.

32 V.S.A. § 4152(a)(5), (6). The grand list is used to raise municipal taxes. See 32 V.S.A. § 4602. Municipalities also determine an "education property tax grand list." 32 V.S.A. § 5404(a); see also id. § 5401(5). Like the grand list, the value of the "education property tax grand list" is not supposed to include the value of nonresidential properties that are exempt by law. This is because the "education property tax grand list" includes values for "nonresidential" properties, id. § 5404(a), and because "nonresidential property" does not include "[p]roperty which is exempt from the municipal property tax by law and not by vote of the municipality." Id. § 5401(10)(A).

Thus, for the purposes of both the grand list and the "education property tax grand list," municipalities must make an initial determination about whether a nonresidential property is exempt. If the municipality has taken a vote to exempt the property, then that

14

determination is simplified. If not, then the listers must attempt to determine whether there is statutory authority for the exemption.

After determining the grand list and the "education property tax grand list," municipalities are required to transmit to the State the data contained in those lists. See 32 V.S.A. § 5404(b) (municipalities "shall transmit to the director in an electronic format as prescribed by the director: education and municipal grand list data, including exemption information . . ."). Based on those data, the State determines the "equalized education property tax grand list for the state" by summing all of the "municipal equalized education property tax grand lists." 32 V.S.A. § 5405(b) (emphasis added). To be clear: the "education property tax grand list" is determined by the municipality, and is distinct from the "equalized education property tax grand list," which is determined by the State. Compare 32 V.S.A. § 5401(5) with § 5401(6).

Like the education property tax grand list determined by the municipality, the value of the "equalized education property tax grand list" determined by the State is not supposed to include the value of nonresidential properties that are exempt by law. As indicated above, the purpose of the equalization process is to "estimate the full fair market value of all property that is taxable for education purposes . . . ." Dewey v. Town of Waitsfield, 2008 VT 41, ¶ 6 n.1, 184 Vt. 92 (emphasis added); see also 32 V.S.A. § 5401(6) (value of property that goes into calculating the "equalized education property tax grand list" is the value of "all nonresidential and homestead property that is required to be listed . . . ."); 32 V.S.A. § 5405(c) (same phrase regarding property "required to be listed at fair market value").

With this background in mind, the court concludes as follows. In carrying out its mandate to determine the equalized education property tax grand list, PVR must make a determination as to the property's tax-exempt status. While the municipality might have already made such a determination for the purposes of the lists it is required to generate, it is within PVR's authority to reach a different conclusion for the purposes of the "equalized education property tax grand list."[9]

Town of Hartford v. Commissioner of Taxes, 135 Vt. 560 (1977), supports this result. In that case, the New England Power Company and the Town of Hartford had entered into a stipulation as to the correct assessed value of the company's property in Hartford for the years 1970–1975. 135 Vt. at 561. That stipulation was entered and embodied in 1971 in a final decree of the Windsor County Court of Chancery. Under the provisions of 16 V.S.A. § 3458a,[10] the tax commissioner redetermined the value of the

_____

[9] The court notes that municipalities are required to indicate on their grand lists what the full listed value of the property would be absent the exemption the municipality believes applies. 32 V.S.A. § 4152(a)(6). The availability of that figure would facilitate the State's calculations in the event the State determined the exemption did not apply. The fact that the municipalities must provide such data supports the court's conclusions, as there would be no reason to require the data if the State were required to defer to the local decision regarding exemptions.

[10] Section 3458a has since been repealed, but at the time read in relevant part as follows:

Biennially, the commissioner of taxes shall determine the aggregate fair market value of all property which is taxable by each town and incorporated school district of the state. For purposes of this part, "taxable property" includes any property which has been exempted, whether in whole or in part, from taxation by action of the town in which that property is located. "Town" or "town school district" includes cities or city school districts, as the case may be.

(1) The aggregate fair market value of taxable property as determined, or, if such be the case, as redetermined, by the commissioner for any town or district and for any year under this section shall be known as the equalized fair market value of that town or district for that year.

(2) Any determination made by the commissioner under this section shall be based upon such sample appraisals, market studies, or other investigative, statistical or projective techniques as, in the judgment of the commissioner, and in view of the resources available for that purpose, shall be appropriate to support that determination.

property for 1974 at a figure different than the figure for that year in the Court of Chancery's final decree. The Town of Hartford appealed to the Windsor Superior Court, arguing that the values in the final decree are not properly subject to reappraisal. The Superior Court rejected the town's contention, and affirmed the Commissioner's appraisal. The Town of Hartford then appealed to the Supreme Court, again arguing that the values in the final decree are not properly subject to reappraisal. See id.

The Supreme Court likewise rejected the Town of Hartford's argument and affirmed, reasoning as follows:

> The purpose of this appraisal was to implement an equalization of State funds as between municipalities. Various communities may vary in ways of appraisal that could put them at an advantage or disadvantage with respect to the distribution of State aid to education funds. It was the intended purpose of the reappraisal provisions to authorize the commissioner to bring the measuring of taxable resources of communities to a more nearly common measure. This, obviously, was to make the distribution of State funds for education as fair as possible.
> The essence of this statutory procedure is to free the commissioner from the appraisal binding on the municipality for its own tax purposes. There is no doubt that the court decree operating between the taxpayer and the town bound the town to a value of the property for town tax purposes, even though it was a stipulated appraisal rather than being determined independently by the trier.
> But the town is similarly bound by its own grand list, yet the statutory authority given the commissioner overrides it. Taking this statutory authority together with the acknowledged fact that neither the commissioner nor the Department of Taxes was a party to the litigation cited, it is the holding of this Court that the commissioner had full authorization to reappraise the property in question. To hold otherwise would frustrate the statutory objective.

Id. at 562. Although Hartford was decided long before Act 60 became law, the purpose of § 3458a—to use an equalization process to make the distribution of State funds for education as fair as possible—is the same. And while Hartford involved a question of

---

Hartford, 135 Vt. at 561–62.

17

valuation rather than taxability, its lesson is equally applicable here: the State is not bound by the municipality's determinations.

Subud of Woodstock, Inc. v. Town of Barnard, 169 Vt. 582 (1999) (mem.), does not require a contrary result. That case does establish that when PVR reviews the BCA's determination of a property's fair market value under 32 V.S.A. § 4461, it lacks jurisdiction to determine the property's tax-exempt status. 169 Vt. at 583. However, those appeals address municipal taxation. PVR has a different role to play in petitions for redetermination of tax-exempt status for State property tax purposes, a distinction not addressed in Subud. The Court's short entry order in that case did not address PVR's statutory mandate to determine the "equalized education property tax grand list."

Finally, the court rejects the Town's claim that PVR did not make a decision about whether the Property is tax exempt. PVR expressly said that the Town had presented no evidence of tax exemption and that there was therefore "no evidentiary support" for a "finding by PVR that the property is exempt." Letter from Director Johnson dated April 8, 2008. Although it could have been argued that PVR's decision was not final because of its reference to the then-pending court case, the Town itself treated the decision as final by appealing it to the VAB. Thus, the Town waived any objection on that basis.

### B. Whether PVR is Bound by the Final Order in the Pace Appeal

The State argues that the Pace appeal does not bind the State because the State was not a party to that action. State's Mot. for Summ. J. at 10 (filed Sept. 7, 2010). The Town contends that the State had actual notice that the Town would not contest RHS and PACE's claim of exemption, and was thus required to join the earlier action under

18

V.R.C.P. 18 if it asserted a claim of relief other than that asserted by the Town, RHS, and PACE. Opp'n at 5 (filed Oct. 18, 2010). The Town also asserts that PVR was obligated to join the Pace appeal under 32 V.S.A. § 3613. Id. at 6. The State replies that V.R.C.P. 18 is permissive and applies to joinder of claims and remedies by a party—which the State was not in the Pace appeal. Reply at 6 (filed Nov. 4, 2010). The State further contends that 32 V.S.A. § 3613 is inapplicable. Id.

Vermont's Declaratory Judgments Act includes the following provision: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." 12 V.S.A. § 4721. Here, it is undisputed that the State was not a party to the Pace appeal. Pursuant to § 4721, then, the Final Order in that case cannot prejudice the State's rights.[11] The court agrees with the State that V.R.C.P. 18 did not require the State to join the Pace appeal. The court also agrees with the State that § 3613 does not apply—that provision can only be interpreted to involve the State's right to appeal from assessments against state easements for flood control projects. Any other interpretation would lead to the illogical conclusion that the State had appeal rights from all listers' decisions regardless of whether the State had any interest affected by those decisions.

## C. Whether Equitable Estoppel Applies

The Town argues that the State is equitably estopped from asserting that a value for the Property should be included in the calculation of the Town's common level of appraisal. Opp'n at 6 (filed Oct. 18, 2010). "The doctrine of equitable estoppel seeks to

---

[11] That problem does not arise in this case because the taxpayer is not affected by this court's ruling, which relates only to the Town's obligations to the State.

promote fair dealing and good faith by preventing 'one party from asserting rights which may have existed against another party who in good faith has changed his or her position in reliance upon earlier representations.'" Beecher v. Stratton Corp., 170 Vt. 137, 139 (1999) (quoting Fisher v. Poole, 142 Vt. 162, 168 (1982)). The elements of equitable estoppel are well established in Vermont:

> The party invoking the doctrine has the burden of establishing four essential components: (1) the party to be estopped must know the facts; (2) the party being estopped must intend that his or her conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the conduct of the party to be estopped to his or her detriment.

Jones v. Dep't of Forests, Parks and Recreation, 2004 VT 49, ¶ 15, 177 Vt. 81. In addition:

> [E]stoppels "against the government are rare and are to be invoked only in extraordinary circumstances," . . . where the "injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case."

Id. (citations omitted).

The Town contends that the State engaged in conduct, or made representations, that led the Town to believe that PVR would abide by the result in the Pace appeal. See Opp'n at 7 (filed Oct. 18, 2010). Specifically, the Town asserts that (1) PVR agreed to postpone the hearing before the VAB pending a decision in the Pace appeal; (2) PVR did not inform the Town of PVR's intention to treat the Final Order as a "non-decision" until after the time for appealing that order had passed; and (3) PVR is actively involved in instructing towns on grand list matters. Id. Even if all true, none of those facts indicates a representation by the State to the Town that the State was agreeing to be bound in a

20

declaratory judgment action to which the State was not a party. The court therefore concludes that the Town has not met its burden of establishing the second element of its estoppel claim.

## D.  The Claim of Inadequate Discovery

The Town's final argument against summary judgment is that the procedure is premature. Rule 56 does not require that summary judgment motions await completion of discovery, but it does require "an adequate time for discovery." Bushey v. Allstate Ins. Co., 164 Vt. 399, 405 (1995). The three factual issues on which the Town asserts it has had inadequate discovery are: (1) whether RHS leases the Property to PACE for a profit; (2) whether RHS and PACE share a "single mission" or close relationship; and (3) the circumstances of the hearing before the VAB for the purposes of establishing the Town's equitable estoppel claim. See Opp'n at 9–10 (filed Oct. 18, 2010).

The first two issues go to the three-part test articulated in American Museum of Fly Fishing, Inc. v. Town of Manchester, 151 Vt. 103 (1989). For the reasons discussed below, the court need not apply that test in this case, and thus no additional discovery on those issues is necessary. The third issue goes to the Town's equitable estoppel claim. The court has already addressed that claim; no further discovery is necessary to resolve that issue.

## E.  Taxability

The issue of the taxability of the Property in this case has simultaneously meandered its way through a variety of levels of review on two different tracks. The first track—the Pace appeal—was unusual in the sense that at the time the issue came before this court, the Town sided with the taxpayer and argued that the Property was exempt,

21

and there was no party arguing that the Property was taxable. Thus the Pace appeal did not actually resolve any controversy. The second track—the § 5408(d) appeal in this case—pits the Town against the State. This process is far from ideal or efficient. However, the taxability issue has now been fully briefed, involves no material disputed facts, and is ripe for summary judgment.

The issue presented in the State's motion is whether the Property satisfies the requirements for tax exemption set forth in 32 V.S.A. §§ 3802(4) and 3832(2). Those sections can both be found in chapter 125 ("Exemptions") of Title 32. The former section provides in pertinent part: "The following property shall be exempt from taxation: . . . (4) Real and personal estate granted, sequestered or used for public, pious or charitable uses . . . ." 32 V.S.A. § 3802(4). The latter section provides in pertinent part:

> The exemption from taxation of real and personal estate granted, sequestered or used for public, pious or charitable uses shall not be construed as exempting: . . .
>
> (2) Real estate owned or kept by a religious society other than a church edifice, a parsonage, the outbuildings of the church edifice or parsonage, a building used as a convent, school, orphanage, home or hospital, land adjacent to any of the buildings named in this subsection, kept and used as a parking lot not used to produce income, lawn, playground or garden and the so-called glebe lands.

Id. § 3832(2).

In American Museum of Fly Fishing, Inc. v. Town of Manchester, 151 Vt. 103 (1989), the Supreme Court articulated a three-part test for determining whether a property is entitled to a tax-exempt status as a public use. That test also applies to lands sequestered for pious and charitable uses. Herrick v. Town of Marlboro, 173 Vt. 170, 174 (2001). It is not enough, however, to meet the Fly Fishing test; in order to qualify for exemption, a property must also fall outside the exceptions carved out by § 3832. See

22

<u>Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica</u>, 2005 VT 16, ¶ 12, 178 Vt. 35 (sections 3802(4) and 3832 must be read together).  The court therefore begins with § 3832.

Here, there appears to be no dispute that the Property is real estate and that for the time periods relevant to this appeal, it was owned by RHS.  Nor does the Town appear to argue that RHS is not a "religious society."  <u>See</u> Town's Ex. 7 at 5, attached to Town's Surreply ("PVR correctly notes that the RHS/PACE property is religious property.").  Indeed, it is undisputed that RHS is a Vermont nonprofit corporation organized exclusively for religious purposes.  The term "religious society" is "quite broad," <u>id</u>. ¶ 19, and the court has no trouble concluding that RHS is a "religious society."  Because it is owned by a religious society, the Property can only be exempt if it fits within one of the uses permitted by § 3832(2).  Of the various permitted uses, the only one the Town argues applies is that the Property is a "home or hospital."

### 1.  Is it a Hospital?

A hospital is "an institution providing medical and surgical treatment and nursing care for <u>ill or injured people</u>."  Oxford American Dictionary 378 (1999) (emphasis added); <u>see also</u> 18 V.S.A. § 1902(1) (defining "hospital" for purposes of Vermont's hospital licensing statute as "a place devoted primarily to the maintenance and operation of diagnostic and therapeutic facilities for in-patient medical or surgical care of individuals suffering from <u>illness, disease, injury or deformity, or for obstetrics</u>." (emphasis added)).[12]

---

[12] The court is aware that the Supreme Court has declined to incorporate the definition used in Title 18 into the earlier enacted tax statutes of Title 32.  <u>Med. Ctr. Hosp. of Vt., Inc. v. City of Burlington</u>, 152 Vt. 611, 623–24 (1989).  That was in the context of declining to distinguish between a hospital's inpatient and

The VAB indicated that its members "may now know something more than Director Johnson and Judge Katz about the activities taking place inside the PACE building," but did not articulate specific findings on that point. Still, it is undisputed that PACE leases the Property for the purpose of providing health and social services to the elderly. While it appears that establishing and maintaining a hospital might be consistent with the purposes for which PACE was organized, the facility at the Property in this case does not fit the definition of a "hospital." The facility in this case provides health and social services to persons who are frail, nursing home eligible, and seeking a non-residential adult day program. That is different than providing treatment or nursing care for the ill or injured.[13]

It is true that a hospital's inpatient and outpatient facilities are indistinguishable for taxation purposes. Med. Ctr. Hosp. of Vt., Inc. v. City of Burlington, 152 Vt. 611, 623 (1989). According to the Town, that means "[a] facility that provides only outpatient medical services is therefore a hospital for purposes of the exemption statutes." The Town's position, however, begs the question, since outpatients are by definition hospital patients. Oxford American Dictionary 557 (1999) (defining "outpatient" as "a hospital patient whose treatment does not require overnight hospitalization"). The Town's argument is predicated on the assumption that the PACE facility provides outpatient medical services; that argument assumes the conclusion the Town wants to reach. For these reasons, the court concludes that the Property is not a hospital.

outpatient facilities for tax purposes. The court cites the definition in Title 18 to reinforce the general idea that a hospital is a facility for the care of ill or injured people.

[13] The court also notes that the Town has not come forward with any evidence that PACE or RHS have obtained a license pursuant to 18 V.S.A. § 1903 to maintain the Property as a hospital, and that neither RHS nor PACE's articles of organization, mission statements, or IRS documents describe their purpose or activities as operating a hospital.

## 2. Is it a Home?

As with the term "hospital," the court's primary objective in construing the word "home" is to implement legislative intent. Shlansky v. City of Burlington, 2010 VT 90, ¶ 8. To do that, the court looks first to the plain meaning of the language used in light of the statute's legislative purpose. Id. In discussing the word "home" as it appears in § 3832(2), the Supreme Court has noted that "home" is "general and vague" and "can describe virtually any facility in which persons stay overnight for any reason." Cent. Vt. Hosp., Inc. v. Town of Berlin, 164 Vt. 456, 460 (1995). Here, it is undisputed that the PACE facility is a non-residential adult day program. It therefore does not meet even the most general definition of a "home."

Because the Property is owned by a religious society, and because it is neither a "home" nor a "hospital," the court concludes that even if it were otherwise entitled to an exemption for public, pious or charitable uses under 32 V.S.A. § 3802(4), section 3832(2) operates to prevent the court from construing § 3802(4) as exempting the Property.

## Order

The Town's Motion for Enlargement of Time is granted. The Town's Motion for Leave to File a Surreply is granted. The State's motion for summary judgment is granted. The decision of the VAB is affirmed.

Dated at Burlington this 28th day of January 2011.

_____
Helen M. Toor
Superior Court Judge

25